IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KAREN RALEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:11cv555-WC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

Plaintiff, Karen Raley, applied for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, and supplemental security income payments under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.*.  Her application was denied at the initial administrative level.  Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ issued a decision in which he found Plaintiff not disabled at any time through the date of his decision. Tr. 18.  The Appeals Council rejected Plaintiff's request for review of the ALJ's decision. Tr. 1-5.  Thus, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with

129, 131 (11th Cir. 1986). Plaintiff sought judicial review, and this court remanded the case for further administrative proceedings. Tr. 357-66. On September 10, 2012, Plaintiff received a second administrative hearing before the ALJ. Tr. 313-47. On October 25, 2010, the ALJ again issued an unfavorable decision after the second hearing. Tr. 296-308. On June 30, 2011, the Appeals Council considered Plaintiff's request for review of the ALJ's October 25, 2010 decision and stated that it "found no reason under [the Appeals Council's] rules to assume jurisdiction." Tr. 265-68. The ALJ's October 25, 2010 decision consequently became the final decision of the Commissioner. The case is now before the court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. #10); Def.'s Consent to Jurisdiction (Doc. #9). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

---

respect to Social Security matters were transferred to the Commissioner of Social Security.

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.  ADMINISTRATIVE PROCEEDINGS

Plaintiff was awarded disability benefits as of February 11, 2008 based on a subsequent application. Thus, the limited issue before the ALJ during this second hearing on September 15, 2010 was whether Plaintiff established disability from the alleged onset date of February 17, 2005 through February 10, 2008. Tr. 298; 316.

Plaintiff was forty-seven years old at the time of the second hearing before the ALJ. Tr. 325. Plaintiff graduated high school and has a two-year associate's degree in drafting and design. Tr. 325. Plaintiff's past relevant work experience was as a "technical support specialist," "receptionist," and "drafter." Tr. 338. Following the

administrative hearing, and employing the five-step process, the ALJ found Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of February 17, 2005 through February 10, 2008." (Step 1) Tr. 18. At Step 2, the ALJ found that Plaintiff suffers from the following severe impairment: "bilateral carpal tunnel syndrome status post surgical release." Tr. 298. The ALJ then found that "[t]hrough February 10, 2008, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments." (Step 3) Tr. 300. Next, the ALJ found that:

> through February 10, 2008, [Plaintiff] had the residual functional capacity to perform less than the full range of light work . . . . Specifically, she could not perform handling or fingering in a repetitive fashion. She could no more than occasionally perform reaching.

Tr. 300. The ALJ then found that Plaintiff is unable to perform any past relevant work. (Step 4) Tr. 306. At Step 5, the ALJ found that, "through February 10, 2008, considering [Plaintiff's] age, education, work experience, and residual functional capacity," and after consulting with a VE, "[Plaintiff] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." Tr. 308. After consulting with the VE, the ALJ identified the following occupations as examples: "office helper," information clerk," and "parking lot attendant." Tr. 307. Accordingly, the ALJ determined that Plaintiff "was not under a disability . . . at any time from February 17, 2005, the alleged onset date, through February 10, 2008." Tr. 308.

## IV.  PLAINTIFF'S CLAIMS

Plaintiff presents several issues for this court's consideration in review of the ALJ's decision:  1) whether "[t]he RFC was incorrect and incomplete and should not be used to determine this case"; 2) whether the ALJ "fail[ed] to realistically discuss [Plaintiff's] ability to perform sustained work activities on a regular and continuing basis . . . in violation of [SSR] 96-8p"; 3) whether the ALJ "fail[ed] to evaluate [Plaintiff's] subjective complaints"; and 4) whether the Plaintiff's rights were violated under the Privacy Act.  Pl.'s Brief (Doc. #12) at 1.  The court will address each argument in the section that follows.

## V.  DISCUSSION

### A.  *Whether the ALJ properly determined Plaintiff's RFC.*

Plaintiff challenges the ALJ's RFC determination, arguing that "the ALJ failed to include the non-exertional limitations imposed by [her] medically determinable impairments in his RFC findings."  Pl.'s Brief (Doc. #12) at 1.[5]  The ALJ determined that Plaintiff had the RFC to perform "less than the full range of light work" with the following limitations:  "she could not perform handling or fingering in a repetitive

---

[5] Exertional limitations are defined as those restrictions affecting a person's ability to meet what the Social Security Administration considers the seven strength demands of a job:  sitting, standing, walking, lifting, carrying, pushing, and pulling.  Social Security Ruling 96-9P, 1996 WL 374185 at *5 (July 2, 1996).  Nonexertional limitations, on the other hand, relate to limitations that affect capacities such as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, ***reaching, handling, fingering***, and feeling.

fashion" and "[s]he could no more than occasionally perform reaching." Tr. 300. Defendant contends that the ALJ's RFC determination was "reasonably determined, based on a thorough review of all the evidence of record and giving Plaintiff more than every benefit of doubt." Def.'s Brief (Doc. #20) at 7.

Plaintiff's argument that the ALJ did not consider her nonexertional limitations lacks merit. First, the ALJ placed specific limitations regarding Plaintiff's ability to "handle," "finger," and "reach," all of which *are* nonexertional limitations. *See Moore v. Astrue*, 256 F. App'x 330, 332 (11th Cir. 2007) ("Grasping, handling, and fingering are nonexertional limitations. 'Handling' means having the ability to seize, hold, grasp, or turn an object. 'Fingering' means having the ability to pick or pinch." (citing Social Security Ruling 85-15 (1984)). *See also* Social Security Ruling 96-9P, 1996 WL 374185 at *5 (July 2, 1996) ("a nonexertional limitation is an *impairment-caused* limitation affecting such capacities as . . . reaching, handling, fingering . . . ").

Moreover, in reaching his determination regarding Plaintiff's RFC, the ALJ accorded great weight to the opinions of Dr. Roland Rivard ("Dr. Rivard") and Dr. Donald Brobst ("Dr. Brobst"), finding that both physicians are "certified independent medical examiners" and "[t]heir conclusions are consistent with and supported by the substantial evidence contained in the record, particularly their own objective clinical examination findings and the results of ergometric testing. Their conclusions are

---

Environmental restrictions are also considered to be nonexertional. *Id.*

consistent with one another and are supported by the opinion of [Plaintiff's] own treating surgeon who released [Plaintiff] 'to all activities within her FCE limits.'" Tr. 306.[6] The ALJ noted that in 2005,

> Dr. Rivard opined [Plaintiff] could lift no more than 55 pounds at a time and no more than 30 pounds frequently . . . could carry loads of 30-35 pounds frequently for a short distance. . . . [Plaintiff] had no limitations of her abilities to reach in any direction or to climb stairs or ladders . . . could not perform 'Handling (includes seizing, holding, grasping, and turning[)]' or 'Fingering (picking, pinching, or otherwise working with the fingers primarily)' continuously and repetitively. He recommended that these activities be limited to frequent for the upper right extremity.

Tr. 305. The ALJ also noted that in 2006, "Dr. Brobst recommended that [Plaintiff's] work restrictions for lifting, carrying, climbing, and reaching remain the same as those recommended by Dr. Rivard" and further opined that Plaintiff "could not perform 'handling (includes seizing, holding, grasping, and turning)' continuously or repetitively with either extremity" and that Plaintiff "could not perform 'fingering (picking, pinching, or otherwise working with the fingers primarily)' repetitively and continuously." Tr. 305-06. Given this medical evidence, the court finds the ALJ properly found Plaintiff "was unable to perform handling or fingering in a repetitive fashion during the relevant time period," as the RFC adopts the limitations recommended by both Dr. Rivard and Dr. Brobst during the relevant time period. Tr. 306.[7] Moreover, the ALJ further restricted

---

[6] *See Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985) (the ALJ may rely on opinions of an examining physician).

[7] The court finds that Plaintiff's argument that the ALJ failed to consider the limitations imposed

Plaintiff's RFC stating "in consideration of her pain complaints, the [ALJ] has further limited [Plaintiff's] [RFC] to lifting and carrying no more than 20 pounds at a time or 10 pounds frequently and no more than occasional reaching." *Id.*

Plaintiff challenges the RFC arguing that the ALJ failed to account for all her limitations. Specifically, Plaintiff asserts that she has further limitations than those indicated in her RFC because "the ALJ could see that [she] wore corrective lenses at the hearing" and asserts she has "a hard time telling the difference between some colors." Tr. 299.[8] A review of the ALJ's decision shows he addressed Plaintiff's complaints about her vision including her assertion that while her vision has not been checked since 2004, "[she] know[s] they're worse." *Id.* However, the ALJ noted that Plaintiff "did not describe any functional limitations related to her vision, and she did not allege that her vision is not treatable through corrective eyeglasses. The medical record contains no evidence of a visual impairment." *Id.* Thus, the ALJ properly addressed and discounted Plaintiff's alleged visual limitations due to the lack of objective evidence.

---

by her carpal tunnel syndrome and tendonitis lacks merit as: 1) the ALJ determined Plaintiff's carpal tunnel was a severe impairment during the relevant time period; and 2) he included handling, fingering, and reaching limitations consistent with the medical evidence of record. As to Plaintiff's alleged chronic tendonitis, the record is devoid of any objective medical evidence establishing any limitations due to this alleged impairment.

[8] Plaintiff does not indicate whether she suffered her alleged visual impairments during the relevant time period.

Plaintiff further challenges the ALJ's RFC determination contending that she had environmental limitations for which the ALJ did not account. Plaintiff asserts that on January 13, 2005, "Dr. Samuelson told [her] to 'avoid vibratory tools and any items as such.'" Pl.'s Brief (Doc. #12) at 2.[9] She further contends that "No one has ever asked [her] about cold, heat, vibrations, etc. So how can any or no limitations be decided upon? Any loud or strong fumes gives me a headache." Pl.'s Brief (Doc. #12) at 2. However, as Defendant correctly points out "there is no suggestion in the record that these alleged impairments resulted in any significant functional limitations." Def.'s Brief (Doc. #20) at 9. The court also notes that a Physical RFC assessment completed by a medical consultant in August 2006, indicated Plaintiff had no visual or environmental limitations. Tr. 177-78. The assessment further stated "[Plaintiff] has some residuals as addressed in the RFC. However they are not of a severity as described. Her ADLs show she had few limitations." Tr. 179. Because there is no evidence on the record to support Plaintiff's alleged environmental limitations, this argument lacks merit.

Finally, Plaintiff seems to argue that the ALJ's RFC determination is erroneous because the VE indicated that she was able to perform her past relevant work and she

---

[9] A review of this medical evidence reveals that on the date Plaintiff alleges Dr. Samelson made this statement, his reflect that he had released her back to work on "light duty." Tr. 460. Moreover, Dr. Samelson placed the vibration restrictions only until a functional capacities evaluation was performed. Tr. 460; 240. On February 10, 2005, Dr. Samelson released Plaintiff "to all activities within her FCE limits" and indicated he would send those limits "to her employer." Tr. 244. Thus, the medical evidence fails to establish Dr. Samelson placed further restrictions than those accounted for by the ALJ, who determined Plaintiff "had the [RFC] to

asserts that "all these jobs required frequent use of hands and fingers which [she is] now unable to do." Pl.'s Brief (Doc. #12) at 2. However, the ALJ's decision clearly indicates that he "has given [Plaintiff] the benefit of the doubt and finds that the demands of her past relevant work exceed the residual functional capacity." Tr. 306. Thus, this argument lacks merit as the ALJ's decision accepts Plaintiff's assertion that she cannot perform her past relevant work.

For the reasons indicated above, the court finds the ALJ did not err in failing to include restrictions in Plaintiff's RFC for which the record provides no basis. Because the ALJ properly included limitations based on the medical evidence of record, the ALJ properly determined and placed limitations in Plaintiff's RFC.

### B. *Whether the ALJ failed to discuss Plaintiff's ability to perform sustained work activities on a regular and continuing basis.*

Plaintiff cites to Social Security Ruling 96-8p and argues that the ALJ's decision warrants reversal because he failed "to realistically discuss [her] ability to perform sustained work activities on a regular and continuing basis . . . in violation of Social Security Ruling 96-8p." Pl.'s Brief (Doc. #12) at 2. Plaintiff's argument lacks merit. Pursuant to SSR 96-8p, an "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a

---

perform less than the full range of light work." Tr. 300.

week, or an equivalent work schedule." Social Security Ruling 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Thus, in creating a RFC assessment for Plaintiff, the ALJ has implicitly reached a determination on whether or not Plaintiff can perform those work activities during an eight-hour work day.

### *C. Whether the ALJ failed to properly evaluate Plaintiff's subjective complaints.*

Plaintiff argues that the ALJ failed to properly evaluate her subjective complaints as set forth in SSR 96-7p and 20 C.F.R. §§ 404.1529. Defendant argues that "[Plaintiff's] subjective complaints were reasonably discounted because they were inconsistent with the objective medical evidence of record." Def.'s Brief (Doc. #20) at 10.

Pursuant to SSR 96-7p and 20 C.F.R. §§ 404.1529(c)(4), the ALJ must consider the consistency of Plaintiff's subjective complaints, evaluating the subjective complaints in light of the objective medical evidence, Plaintiff's own statements, and other evidence in the record, and offer specific reasons for discrediting Plaintiff's subjective complaints. Social Security Ruling 96-7p, 1996 WL 374186, at *1 (July 2, 1996). In evaluating subjective complaints, the ALJ considers the extent to which symptoms, such as pain, affect Plaintiff's ability to perform basic work activities.

In this case, substantial evidence supported the ALJ's conclusion that "Plaintiff's subjective complaints are inconsistent with her self-reported daily activities." Tr. 301. For example, the ALJ noted that at her "first hearing on December 4, 2007, [Plaintiff]

testified she felt pain in her hands and arms and that they felt 'heavy' . . . that everything she did aggravated her upper extremities from the elbows down. . . . that her fingers pulled and stung when she used them. . . . [and] her hands hurt even when she was not using them." Tr. 301. However, the ALJ also noted Plaintiff stated "[o]n a 'good' day, she reported she was able to drive approximately 12 miles to town, perform errands, and drive back." *Id*. Furthermore, Plaintiff "described her daily activities as feeding her cat, making coffee, sitting around the house, doing the housework she could do, washing a load of clothes, sweeping the floors and straightening up a little bit." *Id*. The ALJ also noted that:

> [i]n 2006, [Plaintiff] described daily activities that were not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. On June 29, 2006, [Plaintiff] reported her daily activities included performing housework and running errands as needed. The following month, she described performing yard work, such as pulling weeds from her flowers or garden, with frequent breaks. She stated her hobbies included crafts, canning, and yard work. She reported she drove her mother to town. Although [Plaintiff] reported performing tasks for only thirty-minute intervals, she described cleaning her stove, cleaning her bathrooms, and sweeping the carpet. She was able to use a light mop, although she had trouble squeezing it. While she could not operate a push mower, she was able to cut grass using a riding mower. . . . was able to shop but relied on a shopping cart to carry her items. She reported difficulty carrying heavy dishes and 'bigger items,' such as dog food or fertilizer. . . . [and] she drove short distances.

Tr. 302. The ALJ further noted that "clinical findings by [Plaintiff's] surgeon provide some support for [Plaintiff's] allegations of pain but do not support the severity of limitations she had alleged." Tr. 302. For example, on January 29, 2007, Plaintiff

reported increased pain on the right hand and more numbness on the left in the ulnar side. Tr. 302; 192. However, Dr. Samelson's physical examination on that date revealed "both hands ha[d] normal grip," "carpal tunnel, Tinel's, compression, ulnar, Phalen's and cubital tunnel compression or percussion signs were all negative," her light touch sensation was intact, there was no obvious hand abnormality, and she exhibited only "mild lateral epicondylar tenderness bilaterally." Tr. 302; 192. Thus, Plaintiff's allegations contradict evidence of the effectiveness of the medical treatment she has received. In short, the court finds the ALJ reasonably discounted Plaintiff's subjective complaints and he articulated his reasons for doing so as Plaintiff's subjective complaints contradicted her own testimony of her daily activities and the complaints were inconsistent with the objective medical evidence on the record.

### D. *Whether the Plaintiff's rights were violated under the Privacy Act.*

Plaintiff argues that the "Social Security Administration, Appeals Council violated the Privacy Act by sending [her] information on two other SSA clients, when they sent [Plaintiff] [her] electronic file." Pl.'s Brief (Doc. #12) at 1.

Plaintiff's argument lacks merit. In order to bring a claim under the Privacy Act, 5 U.S.C. § 552a(g)(1)(D):

> The plaintiff must demonstrate that: (1) the government failed to fulfill its record-keeping obligation; (2) the agency acted intentionally or willfully in failing to perform its obligation; (3) the failure proximately caused an adverse effect on an individual; and (4) that individual suffered actual damages.

15

*Fanin v. United States Dep't of Veterans Affairs*, 572 F.3d 868, 872 (11th Cir. 2009). Plaintiff cannot establish a cause of action under the Privacy Act. First, Plaintiff presents no evidence, nor does she even allege, that the SSA *intentionally or willfully* sent her another individual's information. Moreover, Plaintiff fails to point to any evidence that could establish that receiving someone else's information proximately caused an adverse effect on her and that she has suffered actual damages as a result. While Plaintiff argues that "[t]his action [sending her someone else's information] alone deliberately delayed these proceedings for months, and could have delayed them for years," Pl.'s Brief (Doc. #12) at 1, Plaintiff presents no evidence to establish that receiving someone else's information did in fact adversely affect her. *See Speaker v. United States Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1383 (11th Cir. 2010) ("As to the actual damages requirement in element four, this Court has held that 'actual damages' as used in the Privacy Act permits recovery only for proven pecuniary losses and not for generalized mental injuries, loss of reputation, embarrassment or other non-quantifiable injuries."). Accordingly, Plaintiff cannot establish the necessary elements to bring a claim under the Privacy Act.

Moreover, Plaintiff lacks standing to bring this claim. As Defendant points out, "Plaintiff has not shown that her own records were disclosed to another individual without her consent." Def.'s Brief (Doc. #20) at 12. Essentially, Plaintiff brings a claim on behalf of the individuals whose information she received and Plaintiff lacks standing

to do so. *See Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 100 (1979) (finding that, in general, a plaintiff "must assert his own legal interests, rather than those of third parties"); *Zanoni v. United States Dep't of Agric.*, 605 F. Supp. 2d 230, 235 (D.D.C. 2009) ("To view subsection (g)(1)(D) in isolation of the other sections and to interpret 'individual' so broadly to apply it to any citizen of the United States—regardless of whether they are the subject of the information—is inconsistent with the way the term is used in other areas of the Privacy Act.").

Because Plaintiff lacks standing and fails to present any evidence to establish this claim, Plaintiff is entitled to no relief.[10]

## VI. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

---

[10] Plaintiff raises other issues without providing any argument in support. Plaintiff asserts that "a reversal of the ALJ's decision is necessary" because the ALJ "fail[ed] to issue a credibility finding in compliance with the law of the Eleventh Circuit." Pl.'s Brief (Doc. #12) at 2. The basis of Plaintiff's argument is unclear. However, Plaintiff's argument is due to fail as the ALJ clearly issued credibility findings in this case by reaching a determination on Plaintiff's RFC and disability status during the relevant time period.

Plaintiff also asserts that the ALJ "***discriminated*** against [her], and has a personal vendetta against [her]." Pl.'s Brief (Doc. #12) at 5. Although the regulations require that the ALJ must not be prejudiced or partial in any way during the hearing, 20 C.F.R. § 404.940; *see also Miles v. Chater,* 84 F.3d 1397, 1400-01 (11th Cir.1996), a review of the record does not reveal that the ALJ was biased. Thus, as Defendant argues "A claim of bias or dishonesty against an administrative adjudicator must overcome the 'presumption of honesty and integrity in adjudicators.' *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975)" and "Plaintiff has not met her burden to overcome th[is] presumption." Def.'s Brief (Doc. #20) at 11.

Done this 21st day of June, 2012.

                                          /s/ Wallace Capel, Jr.  
                                          WALLACE CAPEL, JR.  
                                          UNITED STATES MAGISTRATE JUDGE